Good morning. Angela Kruger, Federal Defenders of San Diego, on behalf of Appellant Rivera-Guerrero. There are several issues before this Court this morning, but the issues I want to focus on are whether or not the Magistrate had jurisdiction under Article III and whether or not the District Court applied the appropriate standard of review. The Magistrate Judge entered a forced medication order without jurisdiction under Article III and 28 U.S.C. 636. And buttressing those violations was the District Court's erroneous standard of review, applied a de novo standard of review, and used his independent judgment to decide the facts and the law. Well, then let me ask the question. If we agree with you that the Magistrate Judge lacked the authority to issue the final order, do we have jurisdiction now, or do we need to remand? My next point is that I would request a remand for the District Court to decide the facts and the law for itself. And I would request that this Court remand on an open record so that I can have an opportunity to present, or the District Court can have the opportunity to consider all the facts and the law. What does the Sell decision from the Supreme Court, what light does that shed on this issue? Sell actually is — doesn't address this issue at all. But if you look at the A Circuit's opinion — Well, that got washed away in the tide, didn't it? No, that's true. That's true. But the A Circuit kind of tells what the facts were in terms of the standard of review and with the Magistrate Judge's order and the District Court's consideration of that. And it looks like the District Court reviewed the record, reversed the Magistrate Judge's findings for insufficient evidence. And if you look at the A Circuit's opinion, it's at 282 F. 3rd at 565. It looks like the District Court may have applied a de novo standard when it reviewed the Magistrate Judge's decision, and that's kind of buttressed by the A Circuit's decision on the standard of review that they So I don't think that there was any reason for the Supreme Court to address it. And Sell itself just does not illuminate the issue. So this issue is something that can be decided by this Court. The Supreme Court's decision in Ornelas makes clear that it's very important for District Court and for appellate courts to apply a de novo standard of review, particularly when dealing with constitutional issues. The whole point is so that there is uniform application of constitutional principles to different facts in the law. And by applying the clearly erroneous standard in this case, the District Court deferred his independent obligation to decide the facts in the law to the Magistrate Judge and left the Magistrate Judge with the sole power to decide both the facts and the law. So I would request that this Court remand to the District Court to decide the facts and the law on an open record. As far as the Sell issues are concerned, the Magistrate Judge did not clearly Excuse me, I'm mulling this over and I need to clarify it. If there was a jurisdictional defect in what happened below, why can we remand? Why don't we have to dismiss the appeal, which is different? There isn't that type of a jurisdictional defect. What it really comes down to is that the Magistrate Judge itself was without jurisdiction under Article III, but then the opportunity to correct the Magistrate Judge's jurisdictional defect and in reviewing By doing de novo what it should have done in the first place. Exactly. But by applying the clearly erroneous standard, I mean, we have a District Court order, so this Court has jurisdiction and Sell makes clear that this Court has jurisdiction to hear pretrial orders of District Courts. The problem that we're faced with here is really an inappropriate standard of review on the part of the District Court, not with this Court's lack of jurisdiction. And I think that that is in the sense that it didn't discuss the standard of review that the District Court employed in reviewing the Magistrate's order. But by issuing its own order, reversing in part the Magistrate Judge's decision, and then the Eighth Circuit considering the District Court's order, it gave the Eighth Circuit jurisdiction, the District Court's order conferred jurisdiction or allowed the appellate court to hear the issue. And then the Supreme Court also held that it had jurisdiction. Yeah. And then it decided to let us. I may have confused the issue by saying we lack jurisdiction. The question should have been, do we lack jurisdiction to reach the merits? And what you're saying is just go back first for de novo review. Yes. That's exactly what I'm saying. I will reserve the remaining time for rebuttal unless you have... Mr. Heenan. This is the Court. I'm Jared Heenan on behalf of the United States. I'm happy to address any of the issues raised by Appellant's counsel in her argument, but I do want to call the Court's attention that I believe the critical consideration for the Court here is the fact that the Sell decision, the Supreme Court decision last year, set forth the standard that this Court needs to consider in terms of whether or not involuntary medication is appropriate in order to render a defendant competent to stand trial. Even if that is so, and we now know what the rules of the game are, that was not applied below, regardless of the issue that Appellant is raising. That is, even if the district court could use a clearly erroneous standard, wouldn't we still need to send it back for reconsideration? If the Court believes that there was no error below, it could affirm the decision of the district court, allow that order to stand, and permit the medication. And Mr. Rivera, in this case, is the appropriate standard. And, in fact, I know there was a discussion with respect to the Sell case itself and the underlying history in the Sell case. The magistrate decision in that case was reviewed by the district court for clear error. Now, the district court, what happened in Sell is there was a dangerousness finding. And the district court said, there is no danger with respect to this defendant, but we're going to uphold the involuntary medication order, regardless, just to help render this defendant competent to stand trial. The Eighth Circuit then looked at the district court's decision and upheld that The Supreme Court found that the dangerousness finding by the magistrate court in Sell's case was, the dangerousness determination was part and parcel of what the magistrate based its involuntary medication order on, that without that, when the district court said no dangerousness, the Supreme Court determined that the order could not stand. Sell is precisely on point in this case. But in that case, too, it was remanded. I guess I, to be sure, it says for further proceedings consistent with this opinion, so it's unclear what the Eighth Circuit might have considered consistent with the opinion. What the Eighth Circuit didn't have the opportunity to do, Your Honor, is consider the four-factor test that the Supreme Court enunciated in Sell. There are four factors that need to be considered, and Sell has now set the standard that the lower courts are to follow, and those factors are that an important government interest exists, that medication will significantly further that government interest, that medication is necessary to further that government interest, and that medication is medically appropriate in light of the medical condition of the defendant. In this case the district court considered those factors. Absolutely, Your Honor. The magistrate court carefully considered each of the four factors. In fact, the magistrate court did as well, each of the four factors in a lengthy hearing on this. Both the magistrate court and the district court have looked at the controlling test, and both the magistrate court and the district court have determined that medication of this defendant is appropriate in this instance. And if I could elaborate just on that a bit, there is a serious felony offense in this case. The defendant is charged with a crime for which the maximum penalty is 20 years, considering his prior criminal history as an aggravated felon. Now, you have to go back into all of the criminal history to get to the 20 years, do you not? To increase the statutory maximum, you do, Your Honor. But actually there's a lot of different case law on this, and there's two district court decisions in Maine that say that a felon in possession of a firearm is not a serious offense. And I disagree that that's not a serious offense, but this is different. This particular crime. And the difference is that it's not purely looking at recidivism. It's not a crime. It is, with a felon in possession, it's not a crime to possess a firearm. But it becomes a crime when you have a prior felony conviction. In this case, it is a crime to violate the immigration laws of the country and enter the country illegally. And that crime is only, the statutory maximum increases when you have prior convictions for felonies, as this defendant does for burglary, for attempted kidnapping. We have a serious offense here that meets the first test, just as the magistrate court and the district court found in this case. Medication will significantly further the government interest in this case. The doctors believe it is substantially likely that the medication will alleviate the disorganized thinking this defendant currently has. The whole point of hospitalization under 18 U.S.C. section 4241 is to, it takes defendants who are not presently competent to stand trial, and it puts them in a place where they can stand trial. Treatment with psychological counseling as well as medical program of medication. In this case, Dr. Murad, the treating psychologist, has determined that psychology has run its course. This defendant, in order for him to become competent to stand trial, needs medication. The doctor in this case, the treating doctor, Dr. Sarazin, has also come to the same conclusion, that he needs the proposed medications in order to become competent. Quite simply, he will not become competent without medication, in the opinion of the doctors in this case. The medications proposed, the newer atypical antipsychotic medication that the doctors would initially try to medicate with, are state-of-the-art drugs. These are drugs that are specifically designed to treat complex mental illnesses, and they're also intended to alleviate side effects that we've seen from some of the older antipsychotic drugs. The primary side effects of these newer atypical drugs are dry eyes and dry mouth. Now, doctors would resort, possibly, to the older generation of antipsychotic drugs if the newer drugs are not effective. But they would initially try to use oral risperidone, that's a newer atypical drug, and they would offer it to the defendant orally. That is the plan. What evidence did you introduce that any particular drug would be effective in this particular case, with respect to this particular defendant? In this case, Your Honor, there was the testimony of the treating doctor, Dr. Sarazin, at the evidence you're hearing before the magistrate judge. And he described the program of treatment that he would engage in, in this case. And given the nature of the illnesses, and given the nature of the medications, there is a bit of trial and error to it. But the point is, they start with low levels of medication, trying to find what is the most effective medication to him, and to help him become more clear, and possibly to help assist his trial lawyer. I understand his testimony, but what seems to me the government had the burden to look at this particular defendant and say that this particular drug would be effective in making him confident. What was that evidence that you introduced, or the government introduced? The evidence, Your Honor, was just based on the testimony of the doctors. But these are doctors. The doctors that were using drugs? Yes, but these are the doctors also who have been observing this defendant. The doctors have had Mr. Rivera, they've been observing him. He's been in custody at Springfield, Missouri, in the federal facility there. And they have tried to use psychological counseling. And they've tried to observe him further and see if there's any possibility that he may be able to become confident without any sort of resort to medication. And those doctors, in their observations of Mr. Rivera, believe that this is an instance where medication is appropriate, medically appropriate, and would help render him substantially likely to help render this defendant confident to stand trial. I guess my question went more to not to whether or not medication was appropriate, but whether this particular medication was appropriate for this particular defendant. Based upon his past history, none of that, nothing was introduced about this particular defendant's history. Is that correct? That is correct, Your Honor, but it is difficult to diagnose these kinds of illnesses. The defendant has been diagnosed with possibly a psychotic disorder as well as possibly a schizophrenic disorder. And there is an overlap with these. It's difficult to get a precise diagnosis. But the antipsychotic medication that is proposed here, is the medication that would be used to treat either one of those? As I understand, the proposal here was to give the new, what we might call the new wave drugs, and then fall back on Haldol and the things that have been around for 30 years or so, which has a different side effect pattern and possibly, well, probably a more violent side effect pattern. That's correct, Your Honor, and I think that's an important point. With respect to this individual defendant and what considerations have been made for this defendant as an individual, the preference is to use the newer drugs because those drugs are less likely to have any sort of complicating side effects. It may be that one of the older antipsychotic drugs, such as Haloperidol, is the most effective for this defendant. But because there is a potential for more serious side effects, such as tardive dyskinesia, which is involuntary movement of the tongue and muscles in the body, the doctors like to avoid that. They'd like to see if this defendant can be treated first with a drug with far lesser side effects, lesser potential for side effects. And then, if it turns out that those drugs are not effective, they would attempt to use a drug that might, in fact, be more effective. I see that my time is... Can I ask one more question about the serious crime issue? The opposing counsel didn't raise it, but are you arguing that any violation of 1326A would constitute a serious crime when read into the context? I mean, if you read Cell, it seems to me it's hard to characterize an illegal reentry of a deported alien as either a serious crime against the person or a serious crime against property. Could you just give me a brief response to that? Absolutely, Your Honor. And first, I don't believe the Supreme Court limited it to serious crimes against property or person, but I believe it did include those as among crimes that would be of important government interest. In this case, the illegal reentry of a previously deported alien, the nature of these crimes, and particularly in my district, the Southern District of California, there are very often defendants who are arrested for this crime. It happens, I think, two or three out of a hundred. Very often, the individuals who are here have no prior criminal history. They are administratively removed back to their country of origin. In this case, the government has initiated prosecution against this defendant because there is a strong government interest in this case. And the government often finds a strong government interest in 1326 cases where the defendant has been deported after being convicted previously of an aggravated felony. In this case, there are two that I submit to the court are aggravated felonies, attempted kidnapping and burglary. Could I ask one more question? In the situation we have here, let's say if medication is ultimately given and the man's condition improves and can be tried, then there can be a conviction and things go from there. If he does not improve under any circumstances, either that he is not given medication or that he's given medication and does not respond to it, then what happens to him? Does he stay in Springfield forever or does he release back to Mexico or what happens? Your Honor, given the status of this defendant as a citizen of the Republic of and trying different medications, if they're unsuccessful, he will be removed back to his country of origin. I don't know what kind of mental health facilities he might be able to avail himself of in Mexico, but it's for that reason that the government seeks the opportunity here rather than simply release him now without having had the chance to see whether or not the defendant can become competent to stand trial. The government would like the opportunity to see if these medications can work and see if it can proceed with a prosecution that deems very important in this case. Thank you, Counsel. Thank you. You have some rebuttal time remaining. You have quite a bit of it, so I am going to ask you a question to start you off, and that is a practical question. Let's assume for the sake of this question that the district court should have reviewed the matter de novo and should not have given any deference to what the magistrate judge had found and held. Nonetheless, Judge Jones wrote about a 25-page opinion in which he went through very carefully each of the cell factors and why he thought what he thought. What's the likelihood if we sent it back and say, no, you should have had a different opening salvo on the first page here about your standard of review, what's the likelihood that anything would come out differently? It's not really clear because if you look at every single point where Judge Jones reviewed Magistrate Judge Porter's evaluation, he was acting as an appellate court. He just was not substituting his own judgment. At every single point, he says Judge Porter didn't err or didn't clearly err or her decision wasn't contrary to law at, you know, Excerpt of Record 313. So Judge Jones was very careful not to step on Judge Porter's opinion. Well, I think you might find that in opinions of this court, even when we acknowledge that we're reviewing a legal issue de novo, you may find stray sentences of that kind. And I guess it may not matter. The proper answer may be if there was a mistake, it has to go back, even if it comes out the same way. But I just wonder ultimately where it gets us. Well, the answer is I can't. And why we shouldn't just review it now on its merits. Because Judge Jones never considered and he never exercised his independent obligation to decide the constitutional issues as well as the factual issues. He should, in the first instance, act as a court who has original jurisdiction over when a court deals with constitutional issues, Ornelas makes clear, the Supreme Court's decision in Ornelas makes clear that you should exercise your independent judgment because it isn't clear that Judge Jones, and it looks to me like he completely deferred to Judge Porter's decision on this issue, that that is why this Court should reverse this case, remand to Judge Jones so that he can decide in the first instance each of the self-factors. Opposing counsel brought up the question about whether or not the district court in Sell applied the clearly erroneous standard. It's not clear to me from the Supreme Court's decision in Sell or from the Eighth Circuit's decision in Sell what standard of review was applied there. But I do believe that under 636, a magistrate judge does not have authority in the first instance to issue an order authorizing forced medication. What is required is, I mean, what should have happened here is that the district or the magistrate judge should have issued findings and recommendations. We should have been given an opportunity to present our objections to the district court. The district court could have reviewed whether or not he wants to hold an additional evidentiary hearing or what else was required, and then decided for himself the legal and factual issues. Judge Nelson, you brought up the question of 1326s. If you look, Apprendi mentions that you should look at the offense elements in deciding a particular case, and if you were to authorize forced medication under the government's arguments here, it would require or authorize the government to have forced medication in every single illegal entry case. If the clear and convincing evidence standard is to have any teeth whatsoever, what is required is evidence in the record that shows particular defendant. I'm sorry? What about his prior felonies? Well, that is not an issue that was really litigated below. The government argued in the district court that he just had felonies and that they weren't aggravated felonies and that he was subject to a 10-year statutory maximum. But now they're arguing to this Court that they are, in fact, aggravated felonies. As you're aware, the question of whether or not a case is or a prior is an aggravated felony is kind of a complicated issue and requires a review of district court documents or state court documents. And so I don't so. And those documents were not in the record. Correct. And now if it's remanded under an open record, as you have requested, those documents will come forward and presumably the government can demonstrate the seriousness of its interest in prosecuting this crime. That is a possibility that that could be relitigated. And we would have to litigate the question of whether or not they're aggravated felonies or just regular felonies. Thank you. I would submit. Thank you, counsel. We appreciate the arguments of both parties. They were very helpful. And the case just argued is submitted. The next case on the argument calendar is Singh v. Ashcroft. Thank you, counsel.
judges: Gibson, D.W. Nelson, Graber